1
2
3
4
5                       UNITED STATES DISTRICT COURT

6                      EASTERN DISTRICT OF CALIFORNIA

7   THE HARTFORD CASUALTY              1:05-cv-00232 OWW LJO
    INSURANCE COMPANY,                 1:05-cv-00233 OWW LJO
8                                      1:05-cv-00234 OWW LJO
9                Plaintiff,            MEMORANDUM DECISION AND ORDER
                                       RE: DEFENDANTS' MOTIONS TO
10      v.                             COMPEL ARBITRATION AND
                                       PLAINTIFF'S MOTIONS FOR
11  S&W FARMS, et al.                  SUMMARY ADJUDICATION.
12
13               Defendants.

14  THE HARTFORD CASUALTY
    INSURANCE COMPANY,
15
16               Plaintiff,
17      v.
18  VALLEY PEARL MARKETING, LLC,
    et al.
19
20               Defendants.
21  THE HARTFORD CASUALTY
    INSURANCE COMPANY,
22
23               Plaintiff,
24      v.
25  CHRISTIE HENDRICKS, et al.
26               Defendants.
27
28

                                   1

## I.   __INTRODUCTION__

This Memorandum Decision and Order addresses pending motions in three cases filed by The Hartford Casualty Insurance Company ("Plaintiff") against, respectively, S&W Farms, Christie Hendricks, and Valley Pearl Marketing, LLC ("Defendants," unless otherwise referred to individually).  Defendants are all in the business of growing apples in the State of California.  Plaintiff also names Dorothy Wyatt ("Wyatt"), an arbitrator, as a defendant in each of these suits.[1]  For convenience and clarity, all citations to the record shall refer to filings in *Hartford v. S&W Farms*, Case No. 1:05-cv-00233, unless otherwise specified.

Currently before the district court for decision are:

1.   Wyatt's Motions to Dismiss in all three cases,

　　a.   *Hartford v. Valley Pearl Marketing, LLC* (1:05-cv-00232), Doc. 8, filed Mar. 18, 2005,

　　b.   *Hartford v. S&W Farms* (1:05-cv-00233), Doc. 8, filed Mar. 18, 2005, and

　　c.   *Hartford v. Christie Hendricks* (1:05-cv-00234), Doc. 8, filed Mar. 18, 2005;

2.   Defendants' Motions to Compel Arbitration in all three cases,

　　a.   *Valley Pearl*, Doc. 12, filed Mar. 28, 2005,

---

[1] All three suits raise the same legal issues and Defendants are represented by the same attorney.  (Wyatt is represented by a different attorney for all three suits.)  The  documents filed in each case parallel each other.  For example, S&W Farms, Christie Hendricks, and Valley Pearl Marketing each filed a Motion to Compel Arbitration in March 2005.  Save for the names of the parties, these three motions are nearly verbatim replicas of each other.

b.   *S&W Farms*, Doc. 12, filed Mar. 28, 2005, and

c.   *Hendricks*, Doc. 12, filed Mar. 29, 2005; and

3.   Plaintiff's Cross-Motions for Summary Adjudication in all three cases,

a.   *Valley Pearl*, Doc. 17, filed Apr. 25, 2005,

b.   *S&W Farms*, Doc. 15, filed Apr. 22, 2005, and

c.   *Hendricks*, Doc. 16, filed Apr. 22, 2005.

## II.   BACKGROUND[2]

These motions concern the scope and effect of an arbitration clause contained within Federal Crop Insurance Corporation ("FCIC") crop insurance policies issued by Plaintiff to each apple grower Defendant.  The terms of FCIC policies, whether issued by FCIC directly or through private companies such as Hartford, are mandated by FCIC regulations.

In this case, the FCIC policies were issued by Plaintiff to Defendants in 2002 for the 2003 growing season.  In June 2003, FCIC amended its regulations to alter the disputed arbitration clause and the procedure by which non-arbitrable disputes are resolved.  The parties disagree as to the operative effect of the June 2003 amendments.  Accordingly, some background on the FCIC and the development of the disputed policy terms is provided.

A.   **Federal Crop Insurance Policies.**

In 1938, Congress enacted the Federal Crop Insurance Act ("FCIA"), now codified at 7 U.S.C. §§ 1501-08.  To carry out its

---

[2] A timetable summary of this case's detailed background is provided at Part IV.C.1, *infra*.

purposes, the FCIA called for the creation of the Federal Crop Insurance Corporation ("FCIC") as an agency of the U.S. Department of Agriculture.  7 U.S.C. § 1503.  FCIC was given authority to offer crop insurance or to reinsure crop insurance policies offered by private insurance companies.  7 U.S.C. § 1508.

This litigation concerns the insurance policy language specified by FCIC at 7 C.F.R. § 457.8, known as the Common Crop Insurance Basic Provisions ("Basic Provisions").  The Basic Provisions constitute a continuous insurance policy, renewing itself yearly unless explicitly terminated by the insured grower, the insurer, or by operation of certain provisions within the policy.  7 C.F.R. § 457.8(2)(a).  Changes to the policy may be made "from year to year," but the insured grower must be able to review any changes to the upcoming year's policy provisions no later than a certain designated date known as the "contract change date."  7 C.F.R. § 457.8(4)(a)-(b); *see also* § 457.8(1) (defining "contract change date").[3]  Any change promulgated after the contract change date cannot be implemented until the following year's contract change date.  *See, e.g.*, 68 Fed. Reg. 37720 (noting that if a specifically indicated regulation did not take effect immediately, it would not be available for review before an upcoming contract change date and therefore could not be implemented until the following year).

Critical to the present dispute is exclusionary language in

---

[3] Although the record does reveal the contract change date of the policies at issue in this case, this appears to be irrelevant as discussed *infra*.

the Basic Provisions specifying that crop losses caused by "[f]ailure to follow recognized good farming practices" are not compensable.  7 C.F.R. § 457.8(12)(b); *see also* Doc. 1, Ex. C at § 12(b).  As discussed in more detail below, Hartford denied certain insurance claims by Defendants on the ground that they had failed to follow good farming practices.  Defendants challenge Hartford's good farming practices determination and assert that their claims were wrongfully denied.  The parties disagree as to whether an arbitrator may resolve Defendants' challenge to this basis for denial of their claims.

**B.   <u>Changes To The Basic Provisions In June 2003.</u>**

The Basic Provisions of Defendants' FCIC policies contain a dispute resolution provision:

> If you and we fail to agree on <u>any factual determination</u>, the disagreement will be resolved in accordance with the rules of the American Arbitration Association.  Failure to agree with any factual determination made by FCIC must be resolved through the FCIC appeal provisions published at 7 CFR part 11.

Doc. 1, Ex. C § 20(a) (emphasis added), filed Feb. 17, 2005. (For purposes of clarity, this passage is referred to as the "Old Dispute Resolution Provision."  The first sentence of the provision will be known as the "Old Arbitration Clause," and the second sentence as the "Old FCIC Referral Clause.")  The Old Dispute Resolution Provision first became a part of the Basic Provisions in December 1997.  *See* 62 Fed. Reg. 65161.

In September 2002, FCIC proposed various amendments to the Basic Provisions.  68 Fed. Reg. 37699.  In particular, FCIC suggested that the Old Dispute Resolution Provision be replaced with a more detailed dispute resolution procedure.  As originally

proposed, it provided in pertinent part:

> (a) If you and we fail to agree on any factual determination made by us [i.e., the private insurance company], the disagreement will be resolved in accordance with the rules of the American Arbitration Association.
>
> ***
>
> (d) If you do not agree with any determination made by us or FCIC regarding whether you have used a good farming practice, you may request reconsideration of this determination in accordance with the review process established for this purpose and published at 7 CFR 400, subpart J.

*Id.* at 37722.  (These proposed changes are referred to as the "New Dispute Resolution Provision."  Subparagraph (a) is referred to as the "New Arbitration Clause" and subparagraph (d) as the "New FCIC Referral Clause.")  In contrast to the Old Dispute Resolution Provision, the New Dispute Resolution Provision explicitly allows the insurer to make determinations of good farming practices and requires growers seeking reconsideration of such determinations to go through FCIC's administrative process rather than through arbitration.  However, unknown to FCIC at the time, the proposed language of the New Dispute Resolution Provision conflicted with the very reconsideration process it references (7 C.F.R. § 400, Subpart J).  *See id.* at 37701.  The nature of the conflict is as follows.

C.    **Subpart J and "Good Farming Practices."**

The Basic Provisions state that the insurer may deny a claim if the grower fails to use "recognized good farming practices"

**6**

when cultivating the insured crop.  7 C.F.R. § 457.8(12)(b); *see also* Doc. 1, Ex. C § 12(b).  In 2000, Congress amended the FCIA through the Agricultural Risk Protection Act ("ARPA"), Pub. L. No. 106-224, 114 Stat. 358, to provide: "A producer shall have the right to review of a determination regarding good farming practices...in accordance with an informal administrative process to be established by [FCIC]."  7 U.S.C. § 1508(a)(3)(B)(i). Pursuant to ARPA, FCIC promulgated an "informal administrative process" referred to as "Subpart J."  *See* 7 C.F.R. §§ 400.90-97. Subpart J first became effective on April 22, 2002, and permitted insured growers to appeal determinations of good farming practices **made by FCIC itself**.  However, good farming determinations made by private insurers could not be challenged through this new process:

> (a) This subpart applies to:
>
> ***
>
> > (2) Determinations of good farming practices made by personnel of the Agency [i.e., the FCIC or the Risk Management Agency of the U.S. Department of Agriculture].
>
> (b) This subpart is *not* applicable to any decision:
>
> ***
>
> > (2) Made by any private insurance company with respect to any contract of insurance issued to any producer by the private insurance company and reinsured by the FCIC....

67 Fed. Reg. 13251 (emphasis added).  (This version of Subpart J is referred to as "Old Subpart J.")  Old Subpart J, therefore,

conflicted with the proposed language of the New FCIC Referral

Clause which indicated that if the insured grower does

> not agree with any determination made by [the private
> insurance company] or FCIC regarding whether you have
> used a good farming practice, [the grower] may request
> reconsideration of this determination in accordance
> with the review process established for this purpose
> and published at 7 CFR 400, subpart J.

68 Fed. Reg. 37722.

During the public comment process on the proposed changes,

FCIC became aware of the incompatibility between the New FCIC

Referral Clause and Old Subpart J.  *Id*. at 37701.  To resolve the

conflict, FCIC proposed "conforming amendments" to Old Subpart J,

bringing it in line with the New FCIC Referral Clause.  *Id*. at

37698.  Subpart J, as amended ("New Subpart J"), would no longer

except good farming determinations made by insurance companies.

*See id*. at 37721 (*codified at* 7 C.F.R. § 400.98(e)).  Like the

New FCIC Referral Clause, New Subpart J provided that all good

farming determinations must be resolved through the FCIC

administrative reconsideration process, whether those

determinations were made by FCIC or a private insurance company.

*Id*.

FCIC promulgated the New FCIC Referral Clause, New Subpart

J, and other changes not relevant to this dispute as a Final Rule

on June 18, 2003 ("June 2003 Amendments").  *See* 68 Fed. Reg.

37697-98.  Although the rule came into force immediately upon

promulgation, *see id*. at 37720, the official summary qualifies

**8**

the actual applicability of the Amendments:

> The changes will apply for the 2004 and succeeding crop years for all crops with a contract change date on or after the effective date of this rule, and for the 2005 and succeeding crop years for all crops with a contract change date prior to the effective date of this rule.

*Id.* at 37698.

## D.   **The Present Dispute.**

In 2002, Plaintiff Hartford issued identical FCIC insurance policies to Defendants for their 2003 apple crops.[4]  Doc. 1 ¶ 13; Doc. 12 at 1:20-23, filed Mar. 28, 2005.  These policies contained the Old Dispute Resolution Provision.  Doc. 1, Ex. C ¶ 20(a); Doc. 12 at 1:24-26.  In April 2003, Defendants apparently suffered crop losses and filed claims with Plaintiff at some point thereafter.  Doc. 1 ¶ 14; Doc. 12 at 2:3-4.  In December 2003, Plaintiff denied these claims on grounds that Defendants had not employed good farming practices.  Doc. 1 ¶ 15; Doc. 12 at 2:3-5.

Pursuant to the Old Dispute Resolution Provision, Defendant Valley Pearl, LLC, initiated arbitration proceedings with the AAA on October 26, 2004, to resolve the good farming practices disagreement.  *Valley Pearl*, Doc. 12 at 2:10-12.  Defendants S&W Farms and Christie Hendricks did likewise on December 10, 2004.  *Hendricks*, Doc. 12 at 2:11-14; *S&W Farms*, Doc. 12 at 2:5-7.  The

---

[4] The New Dispute Resolution Provision and New Subpart J took effect in the middle of this year (2003) to have application to the 2004 crop year.

AAA assigned Wyatt, its employee, to administer the arbitral proceedings.  Doc. 1 ¶ 3; Doc. 9 at 1:21-24.

Plaintiff, however, refused to participate in the arbitration process.  Doc. 12 at 2:8-9.  Plaintiff asserts that the arbitration is time-barred according to the Basic Provisions.  Doc. 1 ¶ 17.  Plaintiff also contends that New Subpart J controls this dispute and therefore divests the arbitrator of jurisdiction to resolve the disagreement over good farming practices.  Doc. 1 ¶¶ 21-22.

### III.   **SUMMARY OF PLEADINGS**

Plaintiff commenced these actions against Defendants on February 16, 2005, seeking a declaration under 28 U.S.C. § 2201(a) that: (a) Defendants' demands for arbitration are time-barred; and (b) regardless of the timeliness of arbitration, New Subpart J prohibits the arbitrator from resolving disputes over the adequacy of Defendants' farming practices.  Doc. 1 at 9, ¶ 1.  Plaintiff also requests that the district court enjoin Defendants from proceeding with arbitration.  *Id.* at 9, ¶ 2.

Defendants all moved to compel arbitration, asserting that the arbitrator herself should decide whether good farming determinations are within her jurisdiction.  Doc. 12 at 2:16-17.  Hartford opposes the motions to compel and moves for summary adjudication on the legal issues outlined above.  Doc. 15.

**10**

Defendant Wyatt moves to dismiss the claims against her in all three suits.  Doc. 9.  Hartford had failed to respond to this motion by opposition or statement of non-opposition as required by Local Rule 78-230(c).

Finally, Hartford and Defendants cross-move for sanctions under Rule 11.  Doc. 1 at 10, ¶ 6; Doc. 18 at 19:5-20:16.

### IV.   <u>LEGAL ANALYSIS</u>

**A.   <u>The District Court's Jurisdiction To Evaluate Arbitrability.</u>**

The district court has jurisdiction over the present dispute under the Federal Arbitration Act, which provides in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.[5]

Facially, the FAA provides a claim to those wishing to

---

[5] The parties in this case are diverse from one another and the amount in controversy is believed to exceed $75,000.  Doc. 1 ¶¶ 6-8.  Therefore, the court would "otherwise have jurisdiction under [28 U.S.C. § 1332]" over the subject matter of this suit. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 405 (1967) (holding that the FAA confers upon district courts the power to resolve disputes over arbitration clauses arising in diversity cases).

enforce an arbitration agreement.  Here, Hartford's complaint

seeks to enjoin or stay arbitration. (The complaint also seeks

interpretation of the scope of the arbitration provision

contained within the operative FCIC policies.)  Some courts have

applied the FAA to adjudicate disputes over the scope of an

arbitration agreement or motions to stay arbitration.  *See Tracer*

*Research Corp. v. National Environmental Services Co.*, 42 F.3d

1292, 1294 (9th Cir. 1994) (question concerning "scope of

arbitration clause is governed by federal law."); *Rosenberg v.*

*Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 19 (1st

Cir. 1999).  Under these cases, it is appropriate to decide the

issues presented under the auspices of the FAA.

The FAA limits the district court's discretion to

determining whether the arbitration agreement is valid, and if

so, whether the subject matter of the dispute is arbitrable.

*Lifescan, Inc. v. Premier Diabetic Services, Inc.*, 363 F.3d 1010,

1012 (9th Cir. 2004).  If the court answers both inquiries in the

affirmative, it must order the parties to arbitrate their dispute

according to the terms of the arbitration agreement in question.

*Id.* (*citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218

(1985)).

The parties do not dispute that the operative policy

language is in the **Old** Arbitration Clause.  The parties do

dispute the scope and meaning of the Old Arbitration Clause and

**12**

the effect of the June 2003 Amendments on its operation.   The critical inquiry centers on the "question of arbitrability" (i.e., whether the parties have submitted a particular dispute to arbitration).  *See AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986).

**B.**   **The Arbitrability Of Arbitrability: May The Arbitrator Decide?**

The question of arbitrability is one form of "gateway question," whose answer "will determine whether the underlying controversy will proceed to arbitration on the merits."  *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). While there are a large number of questions with such potentially dispositive effect, the Supreme Court has indicated that a court (as opposed to an arbitrator) may involve itself in only a narrow range of such questions, those that are "substantive" rather than "procedural."  *See id.* at 83-85.  For example, questions about timeliness or proper notice of the arbitration demand are considered procedural and should be left to the arbitrator to answer.  *Id.* at 85.  On the other hand, "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy" is substantive and may properly be resolved by the court. *Id.* at 84.  However, even this presumption may be overcome if the parties' contract "clearly and unmistakably" gives an arbitrator the power to

13

decide all "gateway questions," including whether the subject matter of a particular dispute is arbitrable.  *Id.* at 83-84; *AT&T Technologies*, 475 U.S. at 649.

      **1.**    **An arbitrator should resolve Plaintiff's claims that Defendants' demand for arbitration was procedurally defective.**

Plaintiff alleges that Defendants' demand for arbitration did not conform to relevant AAA rules regarding timeliness of demands and proper notice thereof.  Doc. 1 ¶¶ 16-17.  These issues fall under the rubric of "procedural" disputes and are thus left to the arbitrator to resolve.

      **2.**    **An arbitrator should determine whether a dispute over good farming practices may be resolved through arbitration.**

When the dispute involves a substantive matter, a court retains authority to determine arbitrability unless the parties have "clearly and unmistakably" granted such authority to the arbitrator.  *Howsam*, 537 U.S. at 83-84; *AT&T Technologies*, 475 U.S. at 649.  On its face, the language of the Old Arbitration Clause appears ambiguous in this regard.  It provides only that factual disagreement between insured and insurer are to be resolved "in accordance with the rules of the American Arbitration Association."  Doc. 1, Ex. C ¶ 20(a).  However, by invoking the AAA's rules in the Old Arbitration Clause, FCIC has expressly made those rules part of the Basic Provisions.  *See C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe*

**14**

*of Okla.*, 532 U.S. 411, 419 n.1 (2001) (when AAA rules are specified by contract as the method of resolving disputes, those rules "are not secondary interpretive aides that supplement [the] reading of the contract; they are prescriptions incorporated by the express terms of the agreement itself.").

The AAA rules applicable to the current dispute expressly specify that the AAA is the arbitrator and empower the arbitrator to "rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Commercial Arbitration Rules R-2, R-7(a) ["Rule R-7(a)"], *at* <http://www.adr.org/sp.asp?id=22440> (last visited Jun. 30, 2005); *see also* Doc. 12, Ex. B ¶ 5.[6]  As an effective a part of the Basic Provisions themselves, *see C & L Enterprises*, 532 U.S. at 419 n.1, the language of Rule R-7(a)

_____

[6] Defendants cite the jurisdictional provision of the AAA Rules as R-8(a) (rather than R-7(a)).  Doc. 12 at 3:15. Defendants take their citation from an arbitrator's interim award in a nearly identical case wherein the arbitrator found that he had jurisdiction to determine whether good farming practices disputes were arbitrable.  Doc. 12, Ex. B ¶ 5.  That arbitrator, who issued his interim award in June 2004, seems to have worked under an older copy of the AAA Rules.  On July 1, 2003, the AAA amended, consolidated, deleted, and renumbered many of its rules. *See* American Arbitration Association, *Summary of Changes: Commerical Arbitration Rules and Mediation Procedures (Including Procedures for Large, Complex Commercial Disputes) Amended and Effective July 1, 2003*, *at* <http://www.adr.org/sp.asp?id=22287> (last visited Jun. 30, 2005).  Rule R-8 is now Rule R-7.  *See* American Arbitration Association, *Commerical Arbitration Rules and Mediation Procedures*, *at* <http://www.adr.org/sp.asp?id=22440> (last visited Jun. 30, 2005).  Rule R-7(a) and the former Rule R-8(a) are textually identical.  Therefore, the district court will refer to Rule R-7(a).

clearly and unmistakably gives the arbitrator authority to decide whether the issue at hand — good farming practice determinations — is within the scope of the Old Arbitration Clause.  Therefore, as with procedural questions, the Basic Provisions require the district court to defer to the arbitrator on the substantive question of arbitrability.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (when a contract gives the arbitrator the authority to decide arbitrability, courts must give "considerable leeway" to the arbitrator).

**C.    Plaintiff's Argument That Good Farming Practices Disputes Are Not Arbitrable.**

Plaintiff argues that the June 2003 Amendments (see Part II.B-C, *supra*) simply override the arbitrator's authority to resolve disputes over good farming practices determinations, and therefore it would be both unlawful and wasteful for the arbitrator to make that determination herself under Rule R-7(a).[7] Doc. 15 at 7:19-12:4; Doc. 20 at 8:19-9:6.  The AAA arbitrator has jurisdiction under Rule R-7(a) to decide the arbitrability of

_____

[7] Plaintiff asserts that it previously engaged in arbitration on this very question at great expense, only to have the arbitrator (a retired California Court of Appeal justice) find that he lacked jurisdiction over the dispute.  *See* Doc. 1 ¶ 24; Doc. 15 at 2:8-3:5; Doc. 20 at 1:27-2:5.  Plaintiff wishes to avoid the expense and hassle of further arbitral proceedings and the possibility of multiple conflicting rulings.  *See* Doc. 20 at 8:19-9:6.  This equitable argument is simple irrelevant to the requisite legal analysis.  Furthermore, Plaintiff, an experienced litigant, bargained for arbitration by issuing these FCIC policies.  Arbitration entails many risks, including the possibility of incorrect analysis and application of the law.

jurisdiction.  She must make her own ruling on the issue if

Plaintiff chooses to raise it.  However, even assuming, *arguendo*,

that the Basic Provisions do not clearly and unmistakably assign

this task to the arbitrator, Plaintiff's argument fails on the

merits and the district court must compel arbitration in this

case.

> **1.    Timetable Summary of the Development of the Dispute Resolution Provisions.**

In supporting or refuting the contention that the June 2003

Amendments preclude arbitral resolution of good farming practices

disputes, the parties place great emphasis on the timing and

effect of those Amendments.  The critical events leading to this

dispute are set forth in the following timetable:

| | |
|---|---|
| December 1997 | FCIC inserts the Old Dispute Resolution Provision into the Basic Provisions. |
| June 2000 | Congress enacts ARPA, amending the Federal Crop Insurance Act (FCIA) with a requirement that FCIC establish an informal administrative process for reconsideration of good farming practice determinations. |
| Some point in 2002 | Defendants purchase FCIC crop insurance from Hartford for their apple crops to be grown in 2003. The Basic Provisions of these policies contain the Old Dispute Resolution Clause. |
| April 2002 | FCIC promulgates Old Subpart J, the informal administrative process called for in ARPA.  Old Subpart J explicitly excepts good farming |

17

<table>
<tr><td></td><td>determinations made by private insurance companies from its review process.</td></tr>
<tr><td>September 2002</td><td>FCIC proposes the New Dispute Resolution Provision, specifying that good farming practices determinations can be made by private insurers and can only be reconsidered through the FCIC process contained in Old Subpart J. Public commentary thereon reveals a conflict: the terms of Old Subpart J state that it is not applicable to determinations made by private insurers.</td></tr>
<tr><td>April 2003</td><td>Defendants apparently suffer damage to their apple crops.  They file claims with Hartford.</td></tr>
<tr><td>Prior to June 2003</td><td>FCIC drafts New Subpart J, resolving the conflict between the New Dispute Resolution Provision and Old Subpart J.  New Subpart J and the New Dispute Resolution Provision both state that good farming practices determinations, whether made by FCIC or private insurers, can only be reconsidered through New Subpart J.</td></tr>
<tr><td>June 2003</td><td>FCIC issues the June 2003 Amendments, codifying the New Dispute Resolution Provision and New Subpart J.  FCIC states that the new provisions will not apply until at least the 2004 crop year.</td></tr>
<tr><td>December 2003</td><td>Hartford denies Defendants' insurance claims because it believes Defendants did not follow recognized good farming practices.</td></tr>
<tr><td>October 2004</td><td>Defendant Valley Pearl Markenting, LLC, initiates AAA arbitration proceedings to resolve the good farming dispute.</td></tr>
</table>

18

| | |
|---|---|
| December 2004 | Defendant Christie Hendricks and Defendant S&W Farms initiate AAA arbitration proceedings to resolve their respective good farming disputes. |
| February 2005 | Plaintiff files suit, commencing the present litigation. |

**2.   The Effect Of The June 2003 Amendments.**

In its initial pleadings, Plaintiff Hartford impliedly argued that the New Dispute Resolution Provision (contained in the June 2003 Amendments) actually displaced the Old Dispute Resolution Provision as of June 2003, thus displacing the language applying the rules of the AAA to good farming practices disputes.  Doc. 1 ¶ 21.  Plaintiff later revised its position and now seeks to establish that the New Dispute Resolution Provision and New Subpart J are not in fact new, but are clarifications of a preexisting procedure for reconsidering good farming practices — a procedure which required growers to seek FCIC administrative review of any adverse good farming determinations made by a private insurer.  Doc. 15 at 10:11-12:4.  Hartford asserts that this procedure has been in place since the enactment of ARPA in 2000.  *Id.* at 7:19-9:1.

For a number of reasons, Hartford's position is unsupportable.  The starting point is the face of the contract which does not identify who may make factual determinations. Furthermore, regardless of who may make factual determinations about the adequacy of farming practices, ARPA did not establish

**19**

any process of review for such determinations.  Rather, ARPA

mandated that an "informal administrative process [] <u>be</u>

<u>established</u>."  7 U.S.C. § 1508(a)(3)(B)(i) (emphasis added).  No

such process existed until FCIC issued Old Subpart J in April

2002.[8]

FCIC's commentary in the Federal Register regarding the June

2003 Amendments further undermines Hartford's argument that New

Subpart J should apply to the current dispute.  First, FCIC's

summary of the June 2003 Amendments plainly provides that the

changes would apply at the earliest to disputes about crops grown

during the 2004 crop year:

> The changes will apply for the 2004 and succeeding crop
> years for all crops with a contract change date on or
> after the effective date of this rule, and for the 2005
> and succeeding crop years for all crops with a contract
> change date prior to the effective date of this rule.

---

[8] Plaintiff makes no mention of Old Subpart J in any of its
briefs and, at best, appears to have completely overlooked it, or
at worst to have intentionally omitted mention of it.  For
example, Plaintiff quotes ARPA's call for an "informal
administrative process," *see* 7 U.S.C. § 1508(a)(3)(B)(i), as the
basis for its conclusion that ARPA mandated FCIC review of good
farming determinations made by private insurers.  Doc. 15 at
7:19-8:26.  Plaintiff's conclusion simply makes no sense.  The
language Plaintiff quotes from ARPA clearly did not create <u>any</u>
review process — nor did it address the separate issue of whether
a private insurer may make good farming determinations, and to
whom and through what process a grower may appeal such a
determination.  The first FCIC pronouncement on those questions
came in Old Subpart J.  By its terms, Old Subpart J does not
apply to determinations of good farming practices made by private
insurers (such as Hartford).  *See* 67 Fed. Reg. 13251.

1  68 Fed. Reg. 37698.[9]  The dispute giving rise to this litigation

2  _____

3      [9] While this passage addresses the actual implementation of
4  the change, the June 2003 Rule technically took effect on June
   18, 2003.  *See* 68 Fed. Reg. 37698.  FCIC issued a lengthy comment
5  regarding this, from which Plaintiff quotes:

6          [S]uch changes regarding the inclusion of an informal
           reconsideration process for determinations of good
7          farming practices and making determinations of good
           farming practices more objective are in the public
8          interest.... For the reasons stated above, good cause
           exists to make these policy changes effective upon
9          filing with the Office of the Federal Register [i.e.,
           June 18, 2003].
10

11 *Id*. at 37720; *see also* Doc. 15 at 11:5-9.  Plaintiff believes
   that such statements support its position that New Subpart J
12 immediately began to control all disputes arising from
   outstanding FCIC insurance policies.  Doc. 15 at 11:4-14.
13 However, Plaintiff's quotation omits important contextual
   material showing that FCIC's decision regarding the effective
14 date was made in light of upcoming contract renewals, not
   preexisting contracts.  The complete text of the passage in
15 question is as follows:
16
           [S]uch changes regarding the inclusion of an informal
17         reconsideration process for determinations of good
           farming practices and making determinations of good
18         farming practices more objective are in the public
           interest....
19
20                           ***

21         [FCIC then finds that four other changes in the June
22         2003 Amendments (unrelated to this dispute) are "in the
           public interest."]
23
24                           ***

25         If FCIC is required to delay the implementation of
           this rule 30 days after the date it is published, the
26         provisions of this rule could not be implemented until
           the next crop year for those crops having a contract
27         change date of June 30, 2003.  This would mean that the
           affected producers and insurance providers would be
28         without the benefits described above for an additional

                                21

involves crops (i.e., Defendants' apples) grown during the **2003**

crop year, making the June 2003 Amendments inapplicable to them.

A number of additional FCIC statements emphasize that the

June 2003 Amendments were in fact changes (rather than

clarifications) and would not to apply until the following crop

year (2004).  For example,

> FCIC has <u>revised</u> the [reconsideration] provision and
> <u>now</u> the insurance providers will be making the
> determinations based on what agricultural experts
> determine are generally recognized production methods.

*Id.* at 37704 (emphasis added).  Also, "FCIC has elected not to

implement the rule in the middle of the crop year."  *Id.* at

37700.  Most importantly,

> Providing [an administrative] reconsideration process
> for determinations regarding good farming practices
> will reduce costs incurred by insurance providers and
> insured producers.  Prior to this rule [i.e., the June
> 2003 Amendments], <u>arbitration or judicial review were
> the mechanisms used to settle disputes regarding the
> use of good farming practices</u>, and both are
> significantly more expensive than the reconsideration
> process that FCIC will perform.

*Id.* at 37698 (emphasis added).

Clearly, the June 2003 Amendments to the good farming

practice reconsideration process were actual <u>changes</u> to Subpart

---

> year.
>     For the reasons stated above, good cause exists to
> make these policy changes effective upon filing with
> the Office of the Federal Register [i.e., so that they
> will apply to crop year 2004].

68 Fed. Reg. 37720.

J, and not simply clarifications of a procedure in existence

since ARPA, as Plaintiff has contended.[10]   FCIC has admitted that

prior to the June 2003 Amendments, arbitration was authorized to

resolve disputes over good farming determinations.   *See id.* at

37698.   FCIC additionally stated that the June 2003 Amendments

would apply no earlier than the 2004 crop year.   *See id.* at

37698.   Finally, FCIC assured that they had "elected not to

implement the [June 2003 Amendments] in the middle of the crop

---

[10] Plaintiff derives its "clarification" argument from
another FCIC comment in the Federal Register:

> FCIC is also publishing a technical correction...to
> clarify determinations of good farming practices made
> by either [FCIC] or private insurance companies are
> subject to administrative review....

68 Fed. Reg. 37715.   Plaintiff claims that this language further
supports its belief that the June 2003 Amendments clarified a
reconsideration process in existence since ARPA.   Doc. 15 at 9.
The full quotation undermines Plaintiff's position:

> FCIC is also publishing a technical correction,
> concurrently with this final rule, <u>to amend the appeal
> procedure regulations found in 7 CFR part 400, subpart
> J</u>, to clarify determinations of good farming practices
> made by either the Agency or private insurance
> companies are subject to administrative review and to
> make other changes required in response to comments to
> the proposed rule.

68 Fed. Reg. 37715 (emphasis added).   The quote, unedited,
explicitly references Old Subpart J and makes no mention of ARPA.
That Plaintiff would attempt to demonstrate otherwise by editing
out the reference to Old Subpart J is inexcusable.   Hartford is
admonished that failure to disclose contrary authority to the
court (as shown in this footnote and footnotes 8 and 9, *supra*) is
sanctionable conduct.   Fed. R. Civ. P. 11; Local Rules 11-110,
83-184(a); *see also Moser v. Bret Harte Union High School Dist.*,
366 F. Supp. 2d 944, 949-53 (E.D. Cal. 2005).

year." *Id*. at 37700.   These statements unequivocally confirm
FCIC's intent to change its regulations, but not to disturb Old
Subpart J or the Old Dispute Resolution Provision for crops grown
during the 2003 crop year (such as Defendants' apples).

**D.   Plaintiff's Argument Regarding FCIC's Authority To Interpret Its Regulations.**

In its final submission to the court on this matter,
Plaintiff suggests that this case involves a dispute over which
FCIC has exclusive interpretive power.   Doc. 20 at 4:4-6:8.   In
support, Plaintiff cites 7 C.F.R. § 400, Subpart X, which
addresses procedures by which one may request a final agency
determination of the meaning of any provision of the Federal Crop
Insurance Act or any regulation promulgated by FCIC.   *See
especially* 7 C.F.R. § 400.767.   Plaintiff asserts that
Defendants' "only remedy is to petition the FCIC for a Final
Agency Determination regarding this threshold subject matter
jurisdiction issue."   Doc. 20 at 6:7-8 (emphasis in original).
Hartford also relies upon a line of cases beginning with *San
Diego Building Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)
in an apparent attempt to invoke the doctrine of primary
jurisdiction.[11]   According to this doctrine, a federal court

_____

[11]   The cases cited by plaintiff only tangentially concern
the primary jurisdiction doctrine, but it is this doctrine that
Plaintiff appears to invoke, rather than the "*Garmon* doctrine"
itself, which essentially concerns preemption of a **state** court's
jurisdiction by federal administrative law.

should permit an administrative agency the first opportunity to decide issues over which the court and the agency have concurrent jurisdiction. *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 671-72 (9th Cir. 2004); Black's Law Dictionary (7th ed.) at 1209.

Plaintiff's invocation of Subpart X and the primary jurisdiction doctrine is puzzling.  If Plaintiff truly believes that the district court should defer to the primary jurisdiction of the FCIC, it is unclear why Plaintiff has not initiated the Subpart X process of its own accord.  Instead, Plaintiff has filed suit for declaratory relief to the effect that (a) its interpretation of FCIC regulations is correct, (b) only FCIC may interpret its own regulations, and (c) the district court shares jurisdiction with FCIC and should defer to it in the spirit of comity.

Plaintiff's argument as to the exclusivity of FCIC's interpretive authority is simply another variant on the question of arbitrability.  Should Plaintiff choose to raise this issue at arbitration, Rule R-7(a) authorizes the arbitrator to decide whether Subpart X has any bearing on her authority to reach the merits of this dispute.

**E.   <u>Arbitral Forum.</u>**

FCIC has issued a Final Agency Determination stating that the Old Arbitration Clause allows arbitration before "any Alternative Dispute Resolution organization, provided the

organization applies the rules of the AAA to the proceedings."
FAD-007 (issued May 18, 2001), *at* <http://www.rma.usda.gov/regs/
533/fad-007.html> (last visited June 30, 2005).  Plaintiff raised
FAD-007 at oral argument, apparently seeking a declaration that
it is not required to arbitrate the current dispute with
Defendants before the AAA.  FAD-007 makes clear that the Basic
Provisions do not <u>require</u> arbitration before the AAA.  However,
the policy Plaintiff issued incorporates AAA rules, which make
AAA the arbitrator.  *See* AAA Commercial Arbitration Rules R-2.
There is nothing in FAD-007 that would enable the district court
to <u>halt</u> AAA-administered proceedings already underway by
rewriting the contract.  No such declaration can be issued.

**F.    <u>Rule 11 Sanctions.</u>**

Both Hartford and the apple grower Defendants have moved for
Rule 11 sanctions against each other.  Rule 11 provides the
district court the opportunity to sanction attorneys whose
pleadings, motions, or other submissions to the court are legally
or factually unsupportable, frivolous, or otherwise intended for
an improper purpose (such as unnecessary delay or increasing the
cost of litigation).  *See* Fed. R. Civ. P. 11(b).  Before
petitioning the court for sanctions, the moving party must serve
the allegedly offending party with a motion for sanctions and
allow that party twenty-one days to correct or withdraw the
submission at issue.  Fed. R. Civ. P. 11(c)(1)(A).

Although Plaintiff is cautioned to consider carefully its duty to cite contrary authority, see *supra* note 10, neither Plaintiff nor Defendants have demonstrated that Rule 11 sanctions are factually or procedurally appropriate.  The motions are **DENIED.**

**G.   Wyatt's Motion to Dismiss.**

Defendant Wyatt, the AAA administrator of the arbitration initiated by Defendants, moves the district court to dismiss her as a defendant on grounds of arbitral immunity.  Doc. 9.  The Federal Arbitration Act does not grant immunity to arbitrators, but courts considering the issue (including the Ninth Circuit) have uniformly extended the doctrine of judicial immunity to encompass arbitrators.  *See, e.g., Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987) (holding that arbitrators enjoy judicial immunity and citing numerous decisions that reach the same conclusion).  Plaintiff has not opposed Wyatt's motions in any of the cases currently under consideration.  Therefore, Wyatt is **DISMISSED AS A DEFENDANT.**

**V.   CONCLUSION**

For the reasons set forth above:

    1.   Plaintiff's request for declaratory relief
         pursuant to 28 U.S.C. § 2201(a) is **DENIED.**

    2.   Plaintiff's request that the district court enjoin

**27**

Defendants from proceeding with the arbitration of this dispute is **DENIED.**

3.   Plaintiff's request for Rule 11 sanctions against Defendants is **DENIED.**

4.   Defendants' Motion to Compel Arbitration is **GRANTED.**

5.   Defendants' request for Rule 11 sanctions against Plaintiff is **DENIED.**

6.   Dorothy Wyatt's motion to dismiss is **GRANTED** and she is **DISMISSED AS A DEFENDANT.**

**SO ORDERED.**

**Dated: Jul7 6, 2005**

**/s/ OLIVER W. WANGER**

_____

**Oliver W. Wanger
UNITED STATES DISTRICT JUDGE**